UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JAMIL AHMAD,

    Petitioner,

v.

JAMES A. YATES, Warden,

    Respondent.

No. C 11-1897 RS (PR)

**ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner seeks federal habeas relief from his state convictions. For the reasons set forth below, the petition is DENIED.

## BACKGROUND

In 2007, a Santa Clara County Superior Court jury convicted petitioner of first degree murder and assault with a semiautomatic firearm and possession of a firearm by a felon, consequent to which petitioner was sentenced to 106 years-to-life in state prison. Petitioner was denied relief on state judicial review. This federal habeas petition followed.

According to evidence presented at trial, in 1988 petitioner was dating, and had a child, W., with Sasha Wiggins, though they were never married. Petitioner and Wiggins separated when W. was two. Although not a custodial parent, petitioner maintained a close relationship with W. and visited her frequently. Petitioner saw Wiggins on occasion, when picking up W. from her apartment and W.'s school. Petitioner testified that between 2003 and 2005, he and Wiggins did not get along and were involved in a custody dispute.

In 2005, Wiggins, W. and Wiggins's three other children, R., S., and T., lived in an apartment in San Jose with Wiggins's boyfriend, Richard Garza. On the evening of May 4, 2005, Wiggins and her son R. got into an argument when she brought home more food for Garza than she did for the children. Wiggins hit R., who then put Wiggins in a choke hold, and turned over a table. Around 10:00 p.m., R. and W. left the apartment and were taken by a social worker to their grandmother's house.

R. and W. spoke by telephone to petitioner later that night. W. told him about the fight, albeit with hesitation, because she "know[s] how he gets." Petitioner became angry and asked numerous questions about where in the apartment Garza could be found. Before hanging up, petitioner told W. that their conversation "didn't happen."

Sometime between 2:00 a.m. and 3:00 a.m. on May 5, Wiggins and Garza awoke to their apartment door being kicked in. Wiggins and Garza walked toward the front door and came upon an intruder who pulled out a gun, said, "[Y]eah, wassup, wassup?" and started shooting. Wiggins was standing in the bedroom doorway with Garza behind her. Wiggins was shot four times, but survived. Garza was shot eleven times, dying as a result.

Wiggins described the shooter to police as a muscular African-American male, about five-seven or five-eight, wearing a "do rag" and sunglasses, who moved with "a gangster kind of walk." She recognized the shooter's voice, but was unable to place it exactly. Weeks after the incident, Wiggins told police that petitioner was not the perpetrator, but that she thought he had ordered the shooting.

On the afternoon after the murder, and again a few days later, petitioner contacted Wiggins. Before Wiggins mentioned any details of the incident, petitioner informed her that "the shooter did not intend to shoot her, but Garza was hiding behind her." Petitioner also asked about the investigation, whether the police were talking about him, and asked her to keep him posted. A few weeks after the murder, Lt. Porter of the San Jose Police Department, interviewed petitioner and noted that he fit the description of the shooter provided by Wiggins, and that he appeared to limp owing to an injured leg. Porter also noted that petitioner appeared nervous, fidgety and perspiring during their meeting. Petitioner told Lt. Porter that he had been at the EZ8 Motel in Newark on the night of the shooting and that he never left. Hotel records confirmed that petitioner checked into the hotel at 11:17 p.m. on the night of the murder. An analysis of cell phone records concerning petitioner's cell phone use on the night of the murder revealed that his phone was in the vicinity of Wiggins's apartment between 11:00 p.m. and 3:00 a.m. and that calls reflected a return trip to Newark between 3:14 a.m. and 3:49 a.m. Forensic analysts also determined that petitioner's foot would have fit inside the shoe, which left an impression on Wiggins's apartment door. (Ans., Ex. A at 2–15.)[1]

As grounds for federal habeas relief, petitioner alleges that (1) there was insufficient evidence identifying him as the perpetrator; (2) the trial court violated his right to due process by limiting the testimony of a defense witness; (3) the trial court failed to instruct the jury *sua sponte* on how to use evidence of a prior conviction; (4) the trial court violated his rights by giving a flight instruction; and (5) defense counsel rendered ineffective assistance. (Pet., Ex. 1 at 1–5.)

---

[1] All citations to the state appellate opinion come from the version filed by the state. The state did not identify the exhibit by letter or number. For convenience, this Court will refer to the opinion as exhibit A.

## STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

1. **Sufficiency of the Evidence**

Petitioner claims that there was insufficient evidence to identify him as the shooter, in violation of due process. (Pet., Ex. 1 at 1.) A federal court reviewing a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a

reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992). Nor does a federal habeas court in general question a jury's credibility determinations, which are entitled to near-total deference. *Jackson v. Virginia*, 443 U.S. 307, 326 (1979). The federal court determines only whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. *Id.* at 324. "[T]he only question under *Jackson* is whether that [jury] finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, No. 11-1053, slip op. 7 (U.S. May 29, 2012).

The state appellate court correctly found ample evidence to support the jury's conclusions and denied petitioner's claim. First, the evidence shows that petitioner had reason to be, and was, upset with Garza. W. had complained to petitioner about Garza's presence in the apartment and the impact that it had on her. The family social worker testified that the custody proceedings were ending, and thus, not only would Wiggins likely have full custody over W., but the court would be powerless to do anything about Garza's continued presence in the apartment. W. reported to police that petitioner did not like Garza. (Ans., Ex. A at 3, 16.)

Second, the evidence suggests that petitioner had the opportunity to commit the crime. Cell phone tower records reveal that, at the time of the shooting, petitioner's cell phone was in San Jose where Wiggins's apartment is located. (*Id.* at 17.) Third, petitioner matched the physical characteristics of the perpetrator. According to Wiggins, like petitioner, the man was African-American. The shooter's height, build, and "gangster kind of walk" were similar to that of the petitioner. (*Id.*) Wiggins also recognized the shooter's voice when he used the phrase "wassup, wassup?" Petitioner's girlfriend testified that she had heard petitioner use that phrase before, and mimicked it at trial. Further, according to forensic

analysis, petitioner could have fit into the shoe that left a print on Wiggins's apartment door. (*Id.*)

Finally, petitioner made several incriminating statements on the night of, and days following, the murder. On the night of the incident, petitioner became angry during a phone conversation with R. and W., and repeatedly asked where Garza was located in the apartment. He told W. to act as though the conversation did not happen. (*Id.* at 16–17.) Wiggins told the 9-11 operator that the shooter seemed to know exactly where she and Garza were in the apartment. Further, within a day of the murder, petitioner visited Wiggins and told her that the shooter had not intended to shoot her, but that Garza was hiding behind her. Petitioner asked Wiggins to keep him informed of the details of the investigation and seemed nervous when interviewed by police. (*Id.* at 17–18.)

Though petitioner argues that he was not identified as the shooter, the relevant question is whether the evidence was sufficient for a jury reasonably to conclude that he was the shooter. *See Jackson*, 443 U.S. at 326. There was ample evidence presented at trial to support the jury's finding that petitioner shot Garza and Wiggins. Based on the evidence, a rational trier of fact could have found that petitioner had reasons to want Garza removed from the apartment where his daughter was living. Further a juror could have found that, given the evidence from cell phone records, petitioner had the opportunity to commit the crime. Finally the jury could have reasonably found the physical similarities between petitioner and the perpetrator, and petitioner's incriminating statements, to be sufficient to identify petitioner as the shooter. Because the jury's findings were not so insupportable as to fall below the threshold of rationality, petitioner's claim must be DENIED.

Petitioner contends that he had an innocent reason for being in the vicinity of Wiggins's apartment on the night of the murder. Specifically, that he was in San Jose to pick up money from the apartment of his girlfriend, Jessica Johnson, in order to meet up with friends from whom he planned to purchase drugs. However, this Court must presume that "the trier of fact resolved any [] conflicts in favor of the prosecution, and must defer to that

resolution." *Jackson*, 443 U.S. at 326.

## 2. Defense Witness Testimony

Petitioner contends that the trial court erred in conditioning the testimony of Jessica Johnson upon his presentation of additional evidence, resulting in a violation of his right to a fair trial, to present a defense, and to protection against compelled self-incrimination. (Pet., Ex. 1 at 3.) The prosecution planned to introduce cell phone tower records to establish that petitioner had the opportunity to commit the offense. (Ans., Ex. A at 19.) The defense intended for Johnson's testimony to show that petitioner had an innocent explanation for being in the area at the time of the shooting.

According to Johnson, on the night of the murder, petitioner came to the hospital where she was working and persuaded her to lend him money to purchase drugs. Johnson gave him the key to her apartment, which is located near Wiggins's apartment in San Jose, and told petitioner to go there to get the money. Johnson returned to her apartment two days later and found that money had been taken. (*Id.*)

Johnson offered no personal knowledge on when, or if, petitioner was at her apartment. Moreover, when defense investigators asked Johnson about petitioner's activities on the night of the murder, Johnson stated that petitioner had brought her food at work on May 6, the day after the murder had taken place, and did not mention giving the key to petitioner. Johnson told the prosecutor's investigator that she had given the key to petitioner, but that she did so on May 5, again, after the murder had taken place. (*Id.* at 15.)

The trial court found Johnson's testimony to be speculative and irrelevant because it did not negate the prosecution's "opportunity" argument: that petitioner could have gone to the apartment at any time after he was given the key. The court ruled that Johnson's testimony would be relevant only if the defense were able to offer additional evidence to establish that petitioner was at Johnson's apartment at the time of the murder. The state appellate court found that Johnson's testimony could have at least raised a "reasonable doubt concerning whether [petitioner] was the intruder at Wiggins's apartment," and therefore,

Johnson's testimony should have been permitted. However, the appellate court noted that, although the trial court erred, the error did not compel reversal because it was not reasonably likely that petitioner would have obtained a more favorable outcome had the court permitted Johnson to testify without additional evidence. (*Id.* at 13–14.)

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee has been violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *See Henry v Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999). "[W]ell-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. Plainly referring to rules of this type, we have stated that the Constitution permits judges to exclude evidence that is repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues." *Holmes v. South Carolina*, 547 U.S. 319, 326–27 (2006) (citations and quotations marks omitted). The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir. 1986).

A habeas petitioner is not entitled to relief unless the trial error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). In other words, state prisoners seeking federal habeas relief may obtain plenary review of constitutional claims of trial error, but are not entitled to habeas relief unless the error resulted in "actual prejudice." *Id.* at 637.

Petitioner's due process claim is without merit. Given the limited exculpatory nature of Johnson's testimony, the conflicting statements that she made at trial and to investigators, and the strong evidence against petitioner, the state appellate court was reasonable in concluding that it was not likely that petitioner would have obtained a favorable verdict had

Johnson been permitted to testify without additional evidence. The trial error did not have a "substantial and injurious effect or influence in determining the jury's verdict," because petitioner has not shown that the outcome would have been different if Johnson's testimony had not been limited by virtue of the absence of additional predicate evidence. *See Brecht*, 507 U.S. at 637.

Petitioner also contends that, as a result of the trial court's error, he was forced to testify and was thus denied the right to be protected from self-incrimination. (Pet., Ex. 1 at 3.) The Supreme Court has recognized that "an accused's decision whether to testify seldom turns on the resolution of one factor," and that a reviewing court "cannot assume that the adverse ruling motivated a defendant's decision" to testify. *Luce v. United States*, 469 U.S. 38, 42 (1984) (citation omitted). By choosing to testify, petitioner added important details to his defense. Petitioner was able to present a complete alibi and address the incriminating statements made during conversations with R., W., and Wiggins. He was also able to explain why his foot would not fit inside the shoe that had kicked down Wiggins's door. Given the incriminating evidence against petitioner, he had compelling reasons to testify, in addition to ensuring the admission of Johnson's testimony. Petitioner's decision to testify was based on the totality of circumstances, not just the court's trial error.

Petitioner's waiver of his Fifth Amendment rights "is no less effective or complete because [he] may have been motivated to take the witness stand in the first place only by reason of the strength of the lawful evidence adduced against him[,]" unless his testimony is compelled by the need to counter evidence that was illegally obtained and improperly admitted. *Harrison v. United States*, 392 U.S. 219, 222 (1968). Such is not the situation here. Petitioner made a strategic choice to testify in an attempt to rebut incriminating evidence, which was properly obtained by the prosecution and admitted by the trial court. Petitioner was the only individual whose testimony could have provided a complete defense. On such a record, petitioner waived his Fifth Amendment rights, and, thereby any federal habeas claims based on allegations that such right was violated. Accordingly petitioner's

claim that the condition on Johnson's testimony deprived him of his constitutional rights must be DENIED.

### 3. Jury Instructions

Petitioner claims that the trial court deprived him of his right to due process of law by failing, *sua sponte*, to instruct the jury that evidence of a prior felony conviction may not be used to infer petitioner's predisposition to commit crimes. (Pet., Ex. 1 at 2.) Petitioner also asserts that the court erred in giving the jury a flight instruction. (*Id.* at 4.)

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings. *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the deficient instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle*, 502 U.S. at 72; *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].'"). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *See Estelle*, 502 U.S. at 72. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)); *Prantil v. California*, 843 F.2d 314, 317 (9th Cir. 1988).

#### A. Prior Convictions Instruction

The trial court instructed the jury that they could consider evidence of a witness's prior offenses "only in evaluating the witness's credibility." (Ans., Ex. A at 34.) Petitioner's claim is without merit. The limiting instruction given to the jury, that prior convictions may *only* be considered when evaluating petitioner's credibility as a witness, adequately protected petitioner from any inferences that petitioner had a propensity to commit the crimes for which he was charged. Jurors are presumed to follow their instructions. *Richardson v.*

1  *Marsh*, 481 U.S. 200, 206 (1987).

2  Further, jury instructions must be evaluated "in the context of the instructions as a
3  whole and the trial record." *Estelle*, 502 U.S. at 72. The prosecution did *not* argue that
4  petitioner's prior convictions showed that he had a propensity to commit the crimes alleged,
5  rather that the jury should consider his priors when determining his credibility as a witness.
6  In addition, defense counsel emphasized to the jurors the importance of presuming that
7  petitioner was innocent. Given the trial court's clear instruction and the statements of
8  counsel, there is not a reasonable likelihood that the jurors thought they could consider the
9  prior convictions to show bad character or propensity to commit crimes. Accordingly,
10 petitioner's claim is DENIED.

      **B.    Flight Instruction**

Petitioner claims that the court deprived him of his right to due process by giving a flight instruction to the jury. Petitioner contends that there was no evidence in the record to support such an instruction, and that giving it operated to lessen the burden on the prosecution. (Pet., Ex. 1 at 4.)

The trial court gave a standard flight instruction, CALCRIM No. 372, stating that, "if the [petitioner] fled immediately after the crime was committed, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled, it's up to you to decide the meaning and importance of that conduct. [¶] However, evidence that the [petitioner] fled cannot prove guilt by itself." (Ans., Ex. A at 32–33.)

There was sufficient evidence presented at trial on which to base a flight instruction. Specifically, two neighbors heard running and a car screeching after the shooting and the EZ8 Motel records show that petitioner stayed at his hotel room until May 7, rather than returning to his sister's home where he was living. The court made it clear to the jury that evidence of flight could not *prove* guilt by itself and juries are presumed to follow a court's limiting instructions. *See Richardson*, 481 U.S. at 206.

Even if the instruction was given in error, there was a substantial amount of evidence

against petitioner presented at trail. Petitioner has not shown that the instruction, when viewed in the context of the whole trial record, so adversely impacted the jury's decision as to lead to a violation of constitutional rights. Accordingly petitioner's claim is DENIED.

### 4. Assistance of Counsel

Petitioner claims that defense counsel failed to "investigate or offer any readily available corroboration of the persons petitioner called on the night of the incident to support petitioners alibi," and thus, provided ineffective assistance. (Pet., Ex. 1 at 5.) In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 131 S. Ct. 770, 772 (2011).

Petitioner contends that defense counsel was ineffective because he did not contact or investigate petitioner's partying friends and drug dealer in order to corroborate petitioner's alibi, that he was on a drug run on the night of the murder. (*See* Pet., Ex. 1 at 5.) Defense counsel has submitted a declaration in support of the petition, stating that, though the prosecution argued petitioner was lying about calls made on the night of the incident, no evidence was presented to establish those individuals existed. (Pet., Ex. 3 at 2.) Defense counsel further states that "there was no excuse for [him] to leave petitioner's impeached testimony without external corroboration (beyond his girlfriend) tied to the series of calls reflected in phone records when it was readily available." (*Id.*) Defense counsel also states that he was prejudicially ineffective in not at least confirming that the cell phone tower

records introduced at trial "reflected numerous actual calls to petitioner's drug dealer in East Palo Alto along the driving route shown in petitioner's cell records." (*Id.*)

      Defense counsel's declaration of his own inadequacy is not dispositive on an ineffective assistance of counsel claim. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). Thus, petitioner must first show that defense counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687–88. Defense counsel stated that before trial, he did not believe that it was necessary to investigate petitioner's friends and drug dealer, but that "this was plainly a mistake in light of the prosecutor's arguments. . . ." (Pet., Ex. 3 at 2.) However, under *Strickland*, the relevant inquiry is not whether, in hindsight, counsel could have provided better representation, but whether counsel's performance was objectively reasonable. *Harrington v. Richter*, 131 S. Ct 770, 790 (2011) (noting that "[A]fter an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome. *Strickland*, however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind."). Here, defense counsel presented a full defense on other grounds, including the introduction of evidence that petitioner's foot would not have fit within the shoe that left a print on Wiggins's door. Defense counsel was entitled to make the strategic decision not to contact petitioner's party friends or drug dealer. Therefore, petitioner has failed to show that defense counsel's performance fell below an objective standard of reasonableness.

      Even if defense counsel's performance was deficient, petitioner must also show that he was prejudiced by that performance. *Strickland*, 466 U.S. at 687–88. The prosecution introduced cell phone tower records to show that petitioner had the opportunity to commit the crime. (Ans., Ex. A at 19.) The records were not a primary focus of the prosecution's effort to identify the shooter. (*Id.*) By arguing that there were other possible reasons for petitioner's presence near the scene of the crime (a drug run), defense counsel would not

have negated the prosecution's opportunity argument. Further, as noted above, the prosecution presented a substantial amount of evidence, including incriminating statements that petitioner made to R., W., and Wiggins, and the fact that petitioner's physical appearance and mannerisms matched that of the shooter. Testimony from petitioner's drug dealer and friends would not have served to negate any of this evidence.

Finally, petitioner fails to set forth, in argument or declarations, what the witnesses he invokes would have testified to at trial. Without declarations from potential witnesses showing that their testimony could have lead to a different outcome, petitioner cannot show he was prejudiced by defense counsel's failure to call them. *See Matylinsky v. Budge*, 577 F.3d 1083, 1097 (9th Cir. 2009) (finding that petitioner's statements that additional witnesses would testify to his good character, without informing the court as to what the nature of this testimony would be, were insufficient to show that counsel's decision to call only a select few character witnesses was unreasonable); *See also Dows v. Wood* 211 F.3d 480, 486 (9th Cir. 2000) (finding that petitioner provided no evidence that witnesses would have provided helpful testimony because no affidavit was presented from any alleged witness).

In sum, petitioner was convicted because of the substantial evidence presented at trial, not because of defense counsel's failure to contact petitioner's drug dealer and other friends. Defense counsel's performance neither fell below an objective standard of reasonableness nor prejudiced petitioner. Accordingly petitioner's claim is DENIED

## CONCLUSION

The state appellate court's denial of petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals. The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

DATED: July 27, 2012

_____
RICHARD SEEBORG
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

AHMAD JAMIL,

        Plaintiff,

v.

JAMES A. YATES et al,

        Defendant.
_____/

Case Number: CV11-01897 RS

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 27, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Jamil Ahmad P-96564
Pleasant Valley State Prison
P.O. Box 8500
Coalinga, CA 93210

Sharon R. Wooden
CA Attorney General's Office
455 Golden Gate Ave.
Suite 11000
San Francisco, CA 94102-7004

Dated: July 27, 2012

Richard W. Wieking, Clerk
By: Betty Lee, Deputy Clerk